[Cite as *State v. Polcwiartek*, 2014-Ohio-3964.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


State of Ohio                                          Court of Appeals No.   L-13-1194
                                                                             L-13-1195
　　　　　Appellee

                                                       Trial Court No.  CR0201301727
v.                                                                       CR0201301678

Mark Polcwiartek                                       **DECISION AND JUDGMENT**

　　　　　Appellant                                     Decided:   September 12, 2014

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
David F. Cooper, Assistant Prosecuting Attorney, for appellee.

Tim A. Dugan, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is a consolidated appeal from two judgments of the Lucas County Court
of Common Pleas that found appellant guilty of two counts of robbery.  For the following
reasons, the judgments of the trial court are affirmed.

{¶ 2} On May 2, 2013, appellant Mark Polcwiartek was indicted on one count of robbery in violation of R.C. 2911.02(A)(3), a third-degree felony, for events that occurred on April 19, 2013 (trial court case No. CR-13-1678). On May 10, 2013, appellant was indicted on a second count of robbery in violation of R.C. 2911.02(A)(2), a second-degree felony, for events that occurred in April 13, 2013 (trial court case No. CR-13-1727).

{¶ 3} On June 12, 2013, the state of Ohio filed a motion asking the trial court to call Frank Polcwiartek, appellant's father and the victim of both robbery offenses charged herein, as a court's witness pursuant to Evid.R. 614(A) so that the state might question the witness as if on cross-examination. The state explained that the victim/witness had stated that he would prefer that the charges be dismissed or reduced and that no further incarceration be imposed on appellant beyond time served. The state concluded that the interests of the victim/witness were more closely aligned with appellant than with the state. Over appellant's objection, the trial court granted the state's motion.

{¶ 4} The case proceeded to jury trial on July 24, 2013. After the presentation of evidence, the jury found appellant guilty of both counts of robbery as charged. The trial court imposed a sentence of three years for the felony of the second degree and five years of community control for the felony of the third degree.

{¶ 5} Appellant now sets forth the following assignments of error:

> 1) Appellant's convictions were not supported by legally sufficient evidence.

2.

2)  Appellants convictions fell against the manifest weight of the evidence.

{¶ 6} The term "sufficiency" of the evidence presents a question of law as to whether the evidence is legally adequate to support a jury verdict as to all elements of the crime. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  The relevant inquiry in such cases is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 7} "In contrast, a manifest weight challenge questions whether the state has met its burden of persuasion." *State v. Davis*, 6th Dist. Wood No. WD-10-077, 2012-Ohio-1394, ¶ 17, citing *Thompkins, supra*, at 387.  In making this determination, the court of appeals sits as a "thirteenth juror" and, after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins, supra*, at 386.

{¶ 8} Appellant's two assignments of error will be considered together.

{¶ 9} At trial, the jury heard testimony from five state's witnesses.  Toledo Police Officer Michael Johnson testified that he responded to a call from Frank Polcwiartek on April 13, 2013, reporting a robbery at his Toledo residence.  Polcwiartek told the officer

3.

appellant had asked him for money earlier in the day, which Polcwiartek gave him to purchase heroin. Polcwiartek further reported that later on that day appellant returned for more money; when Polcwiartek refused, appellant cornered him, choked him and threatened to kill him if Polcwiartek did not give him the money. Johnson stated that when he arrived at the house Polcwiartek and his friend Ruth Scott appeared very nervous and upset. Polcwiartek reported to the officer that he was worried appellant would return and hurt him.

{¶ 10} Toledo Police Officer Mary Seng testified that she responded to a robbery call on April 19, 2013, from the Toledo apartment of Polcwiartek's friend Ruth Scott. When Officer Seng arrived, Frank Polcwiartek and Scott were present. Seng testified that Polcwiartek and Scott were both distraught and extremely fearful of what appellant might do. Polcwiartek reported that he and his son had argued earlier that day and that appellant had gone to Scott's apartment when his father was not there. Scott reported to Seng that appellant barged into her apartment and said he was not going to return to jail and was going to wait for his father. When Polcwiartek arrived, appellant asked for more money and for his father's car. The officer testified she was told that a struggle ensued when appellant tried to take his father's car keys and that, when appellant got the keys, he drove away.

{¶ 11} Captain John Sylvester, with the Lucas County Sheriff's Office, testified that he supervises the inmate phone system. Sylvester explained that inmates are assigned a personal identification number which they must use when making a call from

4.

the jail.  All calls are recorded.  Sylvester further testified that all calls appellant made while in custody at the jail had been identified and transferred to a single CD.  Excerpts of six completed phone calls made by appellant between April 28 and May 6, 2013, were then transferred to a second CD.  Both were marked as exhibits and admitted into evidence without objection after they were authenticated by Sylvester.  The second CD then was played for the court and jury.  On the CD, appellant can be heard questioning his father at length as to what the older man told detectives and the grand jury.  Appellant told his father to "stick with [his] story" that he gave appellant the car keys and to not change it.  Appellant said, "I didn't take the keys, you gave me the keys."  In another conversation, appellant told Ruth Scott that his father "snitched me out like a little bitch" and said to his father, "You probably ratted me out."  Additionally, appellant can be heard telling his father to go to the prosecutor and say "this is all bull-crap," that it was not a robbery, and that he got his story all wrong because he was mad at appellant.

{¶ 12} Frank Polcwiartek then testified.  Under cross-examination by the state, Polcwiartek, 75 years old, stated that he did not want to testify and that he had been brought in on a warrant.  As to the events on April 13, 2013, Polcwiartek testified that appellant came to his house and asked him for $30 to buy drugs.  Polcwiartek testified that it was appellant's money, and that he holds appellant's money for him.  Later that day, Polcwiartek called the police and reported that his son had said he would kill himself if Polcwiartek did not give him some money.  Polcwiartek testified that he hit appellant and that appellant then restrained him.  The state then played a recording of Polcwiartek's

5.

call to 9-1-1 on that day. On the tape, Polcwiartek can be heard saying that his son tried to choke him and said he would kill him if he did not give appellant some money. After the tape was played, Polcwiartek stated that he overreacted when he called 9-1-1 and that some of the things he said were not correct because he confuses his Polish and English when he is upset. Polcwiartek said the laptop appellant took from the house belonged to appellant. He further testified that he reacted too quickly and should not have called the police.

{¶ 13} As to the events of April 19, 2013, Polcwiartek testified that appellant demanded $20 from him at Scott's house and that he did not recall what happened after that. Polcwiartek admitted he called the police that afternoon but said he did so because he was intoxicated and panicked. He further testified that appellant took his car keys and drove his car away because Polcwiartek was intoxicated and appellant did not want him to drive. The state then played the recording of the 9-1-1 call on that date. Polcwiartek can be heard saying that appellant tried to kill him, that appellant took his car keys and stole his car. Also on the tape, Ruth Scott is heard saying that appellant stole his father's car and tried to grab a knife.

{¶ 14} When asked whether appellant called him from jail and told him what to say in court, Polcwiartek said "not exactly," and added that he could not remember that long ago. Polcwiartek testified that at one time appellant may have mentioned during a phone call that his father should not show up for court.

6.

**{¶ 15}** The state also presented testimony from Ruth Scott, who was with Polcwiartek on both April 13 and April 19. Scott testified that on April 13, 2013, appellant arrived at Polcwiartek's house and the two had a disagreement over money. Appellant and Polcwiartek "had hands on each other," she stated; she did not remember who pushed who first. At one point, appellant had his hands near his father's throat. Ruth stated that the two men fought because Polcwiartek did not want to give appellant any money. She further testified that she did not see appellant "take a computer," although she saw him "leave with one." She added that Polcwiartek does not own a computer. Polcwiartek did give appellant some cash, which Scott testified she believed was appellant's money. As to the events of April 19, 2013, Scott testified that appellant arrived at her apartment looking for his father, who was not there. At some point thereafter, Polcwiartek arrived and appeared surprised to see appellant. The two men argued, but Scott did not recall what they were arguing about. At one point, appellant pushed his father into the kitchen and the two men were "wrestling." During that incident, appellant took his father's car keys. Scott further testified that, while she was aware that Polcwiartek managed appellant's money, she did not know if the cash appellant took from Polcwiartek was his own or his father's.

**{¶ 16}** R.C. 2911.02(A)(2) and (3) provide:

(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:

7.

* * *

(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;

(3) Use or threaten the immediate use of force against another.

**{¶ 17}** This court has reviewed the applicable law as well as the trial court's record, including the oral testimony, the audio tapes of the 9-1-1 calls and the tapes of the calls appellant made from the jail. Upon due consideration, we find that the record contains sufficient evidence to support appellant's convictions as to both robbery charges. In addition, we find, after reviewing the entire record and weighing the evidence and all reasonable inferences, that the trier of fact did not lose its way in reaching its verdicts. Accordingly, appellant's first and second assignments of error are not well-taken.

**{¶ 18}** On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                              _____
                                                         JUDGE

Arlene Singer, J.

_____

Thomas J. Osowik, J.                                 JUDGE
CONCUR.

_____
                                                          JUDGE

8.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.